UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| RANDALL HENSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 5:15-cv-189-JMH |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | ) | **AND ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Upon review the of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Social Security Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that Plaintiff's motion [DE 11] should be denied.

## I.   Background

In March of 2012, Plaintiff, Randall Scott Hensley, filed applications for DIB and SSI, alleging that he became disabled beginning on August 20, 2009. [Tr. 217, 221]. His applications were denied initially and upon reconsideration. [Tr. 114-117].

Hensley appeared and testified at a hearing before Administrative Law Judge ("ALJ") Greg Holsclaw on September 6, 2013. [Tr. 30-86]. On November 29, 2013, the ALJ entered an unfavorable decision for Hensley. [Tr. 10-29]. The Appeals Council declined Plaintiff's request for review [Tr. 1-5] making the ALJ's November 29, 2013 decision the final agency decision for purposes of judicial review. This appeal followed.

Plaintiff was thirty-two years of age at his alleged disability onset date, and thirty-seven years of age at the time of the Commissioner's decision. [Tr. 217]. In his initial application materials, Plaintiff alleged that he was unable to work due to physical and mental impairments. [Tr. 268].

A. *Medical Records*

The evidence of record indicates that Plaintiff was involved in a motor vehicle accident without air bag deployment (and ambulatory at the scene) in late August 2009, after which he received emergency room treatment for left shoulder and arm pain and was diagnosed with a neck strain. [Tr. 524-530]. At this time, radiological images of Hensley's cervical spine were taken, which showed that Hensley had mild degenerative changes but no evidence of an acute fracture or subluxation. [Tr. 533]. Images taken of Hensley's left scapula and spine also revealed no evidence of an acute fracture, dislocation or abnormalities. [Tr. 534-535].

2

An MRI performed in September of 2009 of Hensley's cervical and lumbar spines revealed central disc herniation and annular tears with spondylolisthesis, bilateral spondylosis, and moderate bilateral foraminal stenosis of the lumbar spine. [Tr. 323-325]. An MRI performed in November of 2009 revealed an oblique tear in the labrum with an intact rotator cuff. [Tr. 325-327;]. In January of 2010, Dr. Arthur R. Sonberg diagnosed Hensley with a closed dislocation of acromioclavicular joint and labrum tear although an associated surgery was not performed. [Tr. 723-729]. In late January 2010, Hensley had a C3-C4 discectomy with anterior fusion. [Tr. 691-693]. Hensley was involved in a second motor vehicle accident in May 2011. An x-ray taken on May 12, 2011 revealed lumbar spondylosis at L5-S1 with fact joint arthritis and muscle spasms. Hensley has also complained of headaches, vertigo, and dizziness since his alleged disability onset date.

Hensley has also suffered multiple falls. [Tr. 306, 422, 495]. In July 2010, a fall resulted in injuries to his right foot and ankle. In August 2013, Hensley saw Dr. Tabitha Culver for reported injuries sustained to his right knee from a fall with the associated MRI showing soft tissue swelling but no evidence of an acute bone injury or meniscal tear. [Tr. 773-777].

The record shows Hensley has a history of alcohol consumption. In April 2012, Hensley reported to Jennifer Shepherd, APRN at White House Clinics that he had been diagnosed with alcohol induced

3

pancreatitis a few months earlier, but stated that he had not had anything to drink in two years. [Tr. 455]. In May 2012, Hensley told consultative mental status examiner, Cristi M. Hundley, Ph.D., that he had a length history of alcohol abuse with a peak of drinking a bottle of whiskey and a 12-pack per day, although Hensley denied current alcohol or illicit substance abuse. [Tr. 452]. Dr. Hundley assigned Hensley a global assessment of functioning (GAF) score of 64 [Tr. 453] and opined that Hensley's ability to understand and remember simple instruction as fair to good with his ability to maintain attention and concentration being good. Dr. Hundley further opined that Hensley's ability to interact appropriately in a work setting was fair to guarded and his ability to handle work stresses was guarded (given his descriptions). [Tr. 454].

In May 2012, Hensley was also evaluated by consultative examiner, Dr. Deidre Parsley, D.O. [Tr. 464-470]. Hensley's chief complaints included allegations of headaches, back pain, joint pain, and knee pain to Dr. Parsley. He reported that his headaches were alleviated by the over-the-counter medication and lying down and that he had never been to an emergency room for his headaches. Hensley stated he could sit for one to one and half hours before he needed to change positions and could walk less than one block at a time. Hensley reported that he has been a smoker since age 12 and that he smoked a pack of cigarettes per day. Dr. Parsley

4

noted that Hensley walks with a limping gait but does not require an assistive device.   Hensley reported tenderness in his left shoulder; otherwise, his shoulders, elbow, and wrists were not tender.   Dr. Parsley found that Hensley has decreased sensation to light touch of the lateral left upper extremity from the shoulder to the wrist and the medial left leg from the knee to the ankle. Decreased range of motion of bilateral shoulders, cervical spine, lumbosacral spine, and bilateral hips was also found.   Hensley's hands showed no tenderness, redness, warmth, swelling or atrophy. Hensley was able to make a fist bilaterally and his right hand grip strength was 5/5 while his left (non-dominant) hand had a 4/5 grip strength.   Hensley was able to write and pickup coins without difficulty.   Muscle strength was normal in both right upper and lower extremities and decreased to 4/5 in his left upper and lower extremities.   Ultimately, Dr. Parsley opined as follows:

> [Hensley's] ability to perform work-related activities such as bending, stooping, lifting, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects appears to be impaired due to the objective findings of chronic cervicalgia, throacalgia, lumbalgia, polyarthragias, muscle weakness of the left upper and lower extremities, decreased grip strength of the left hand, decreased range of motion of the shoulders, cervical spine, lumbosacral spine, and hips.

[Tr. 469-470].

In August 2012, State agency physician, Dr. Mukherjee, M.D., reviewed Hensley's records.   Dr. Mukherjee opined that Hensley

retained the ability to perform light exertion work with the following exertional limitations; occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand, walk, and sit about six hours in an eight-hour workday; occasionally climb ramps and stairs; occasionally stoop, kneel, balance, crawl, and crouch; no climbing ladders, ropes, and scaffolds, pushing and pulling abilities commensurate with his ability to lift and carry; and no manipulative, visual, communicative or environmental limitations. [Tr. 140-141; 143-145].

In May 2012 and August 2012, State agency psychologists Celine Payne-Gair, Ph.D. and Ilze Sillers, Ph.D. reviewed Hensley's records. Dr. Payne-Gair and Dr. Sillers both opined that Hensley had no more than mild limitation in his activities of daily living and in maintaining concentration, persistence or pace, with moderate difficulties in maintaining social functioning. [Tr. 93-94; 138; 142]. Beginning in November 2012, Hensley received treatment for depression with diagnoses of a panic disorder and post-traumatic stress disordered. [Tr. 770-772].

B. *Hearing Testimony*

On September 6, 2013, Hensley testified at an administrative hearing held in Lexington, Kentucky where he was represented by counsel. [Tr. 30-86]. Hensley testified that he completed the seventh grade. [Tr. 38]. Hensley further testified that he last worked in August 2009 as a janitor but had to stop due to a motor

6

vehicle accident which has caused neck, back, and shoulder pain as well as anxiety. [Tr. 39-40, 45, 47-48]. Prior to working as a janitor, Hensley testified that he worked as a tow truck driver, lightning rod installer, and carpet cleaner. [Tr. 40-4]. Hensley testified that he lives in a house, takes care of his self-care needs (although sometimes needs help putting on and tying his shoes), has a driver's license, and goes shopping with his fiancé once every two months. [Tr. 36, 38, 56-59]. He testified that he is able to operate a vehicle and that he drives to the store about two times a week. [Tr. 66].

Hensley stated that on a ten point scale, his neck and back pain is often at an eight, goes to a ten at least once a week, and sometimes goes down to a level six. [Tr. 45-46]. He stated that the pain in his left shoulder is about a five or a six. [Tr. 71]. He testified that he had neck fusion surgery in January 2010, which he stated made his condition worse. [Tr. 47-48]. Hensley testified that he is unable to lift his left arm over his head because of the pain caused by the movement, and that he has lost grip strength in his left hand. [Tr. 49]. He stated that he does not have problems with his right hand, elbow or shoulder. *Id*. Hensley stated that his psychological impairments worsen with the stress caused by not being able to support his family, and that he has trouble being around more than two or three people at a time. [Tr. 50-51]. Hensley also testified that he has frequent headaches

7

that started around the time of his 2009 car accident. [Tr. 53-54]. He was using a cane at the hearing, which he stated he was prescribed a month before the hearing after falling down the stairs. [Tr. 56].

Hensley testified that he used to drink alcohol but has not had a drink in two years. [Tr. 64]. He also testified that he has vertigo and, as a result, has fallen three or four times in the past and that he has muscle spasms in his back. [Tr. 67-68]. Hensley stated that he could only lift and carry a gallon of milk for a very short distance with his right hand. [Tr. 72-73]. He said that he could stand for no more than 15-20 minutes at a time, walk no more than 50-60 yards at a time with a cane, and that he can only sit for 20 minutes at a time. [Tr. 73-74].

Vocational Expert ("VE") Betty Hale testified at the hearing. [Tr. 76-84]. She testified that Hensley's past work ranged from unskilled to skilled and from medium to very heavy exertion. [Tr. 78-79]. Assuming a hypothetical individual of Hensley's age, education, and work experience with the same limitations as ultimately determined by the ALJ to apply to Hensley, the VE testified that such an individual could not perform Hensley's past relevant work but could perform the representative jobs of bench assembly, surveillance monitor, and inspector at the sedentary level. [Tr. 80-81]. When asked by Plaintiff's counsel if additional limitations that were not included in the ALJ's residual

functional capacity ("RFC") determination would affect the individual's ability to maintain employment, the VE testified that such limitations would preclude employment. [Tr. 82-84].

   *C. The ALJ's Findings*

   To establish eligibility for disability benefits under the Social Security Act (the "Act"), Hensley had to show that he could not "engage in any substantial gainful activity" due to a long-lasting "impairment." 42 U.S.C. §§ 423(d)(1)(A ); *see Barnhart v. Walton,* 535 U.S. 212, 217 (2002); *Taskila v. Comm'r of Soc. Sec.,* 2016 WL 1533996, at *1 (6th Cir. Apr. 15, 2016). The Social Security Administration processes applications for relief by asking five questions: (1) Does the claimant show she is not engaged in "substantial gainful activity"? (2) Does the claimant have a severe impairment? (3) Does the impairment meet any one of the items on a "list of impairments presumed severe enough to render one disabled"? (4) Can the claimant perform her past jobs? (5) Can the claimant perform other jobs that exist in significant numbers in the national economy? *Id.* at *1 (citing *Barnhart v. Thomas,* 540 U.S. 20, 24-25 (2003); 20 C.F.R. §§ 404.1520, 416.920).

   If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the

Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  *Id.* If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.,* 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999)).

In a decision dated November 29, 2013, the ALJ found that Hensley had severe physical and mental impairments in the form of left shoulder and elbow pain with a separated clavicle, degeneration of the lumbar and cervical spine with surgery, headaches with vertigo/orthostatic lightheadedness, bilateral knee pain, depression/bipolar disorder, and panic disorder without agoraphobia.  [Tr. 15].  Singly or in combination, the ALJ found that Hensley's impairments did not meet or equal the severity of a listed impairment.  [Tr. 17].  The ALJ also found that Hensley's complaints concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible.  [Tr. 20]. Ultimately, the ALJ further concluded that Hensley is unable to perform his past relevant work but has the RFC to perform a limited range of sedentary work with additional postural, environmental, and mental limitations, including the representative sedentary

10

positions of bench assembler, surveillance monitor, and inspector, which positions exist in significant number in the national economy. [Tr. 19, 24]. In making his findings, the ALJ gave great weight to the opinions of consultative examining physicians, Drs. Parsley and Hundley, and to the opinions of the state agency medical consultants, Drs. Mukherjee, Payne-Gair, and Sillers. [Tr. 23].

   D.   *Plaintiff's Assertion of Error*

   Hensley challenges the ALJ's decision on two grounds. First, Hensley argues that the ALJ failed to properly evaluate the medical source opinions of both the treating and consultative physicians as it relates to Plaintiff's impairments and RFC. Second, Hensley argues that the ALJ failed to properly evaluate his allegations of disabling pain.

## *II. Standard of Review*

   The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations. *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir. 2007); *see also Taskila v. Comm'r of Soc. Sec.*, 15-2224, 2016 WL 1533996, at *1 (6th Cir. Apr. 15, 2016). Pursuant to 42 U.S.C. § 405(g), judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*,

594 F.3d 504, 512 (6th Cir. 2010)(citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007))(internal quotation marks omitted).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)) (internal quotation marks omitted).  In other words, as long as an administrative decision is supported by "substantial evidence," this Court must affirm, regardless of whether there is evidence in the record to "support a different conclusion." *Lindsley*, 560 F.3d at 604-05 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994))(internal quotation marks omitted).  In determining the existence of substantial evidence, courts must examine the record as a whole.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)(citing *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 536 (6th Cir. 1981)).

*III. Discussion*

A. *The ALJ Properly Evaluated the Medical Source Opinions and His RFC Determination is Supported by Substantial Evidence.*

Hensley argues that the ALJ failed to properly evaluate the medical source opinions of both the treating and consultative medical providers as it relates to his impairments and RFC.  The RFC finding is the ultimate determination of what a claimant can still do, despite his physical and mental limitations, and is a

matter reserved for the ALJ. *See* 20 C.F.R. §§ 404.1527(d), 404.1546(c), 416.927(d), 416.946(c); *see also Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009). In making this determination, the ALJ considers the record as a whole, including the claimant's credible testimony and the opinions from medical sources. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The Sixth Circuit has recognized that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir.2010) (internal quotation marks omitted). An ALJ's finding on the RFC will be upheld if it is supported by substantial evidence. *Id.*

Hensley argues that the ALJ erred with respect to the RFC determination in finding that he could engage in "unlimited pushing/pulling up to the exertional limitations," specifically arguing that this finding is at odds with Dr. Parsley's opinion that Hensley had diminished upper extremity strength and range of motion. Because the ALJ accorded "great weight" to the opinion of Dr. Parsley, Hensley argues that the ALJ is bound by all of Dr. Parsley's opinions and that the ALJ is not permitted to "cherry pick" portions of Dr. Parsley's report without setting forth a substantial basis for rejecting a portion of the opinion. [DE 11 at 7].

13

The Court disagrees with Hensley's contention of error. First and foremost, the Court notes that while Dr. Parsley opined that Hensley's ability to perform work-related activities such as pushing and pulling heavy objects "appears to be impaired," Dr. Parsley placed no specific exertional limitations on Hensley with respect to pushing and pulling nor did Dr. Parsley opine that Hensley was unable to work in any capacity, which the ALJ recognized. [Tr. 464-470]. Indeed, in considering Dr. Parsley's observations in making his RFC determination, the ALJ noted that while "Dr. Parsley cautioned that these findings suggest that the claimant would have difficulty engaging in such work-related activities as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing and pulling heavy objects [...] [s]he did not find that they preclude him from engaging in all work activities." [Tr. 22]. The Court also finds that the ALJ adequately considered Dr. Parsley's opinion regarding Hensley's decreased range of motion and upper extremity strength as the RFC specifically provides for "no reaching over shoulder-height with the left, non-dominant upper extremity" as well as "no lifting/carrying more than 10 pounds occasionally." [Tr. 19].

Moreover, an ALJ is required to assess a claimant's RFC "based on all of the relevant medical and other evidence," thus, no medical source opinion is conclusive when determining one's RFC. 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-5p, 1996 WL 374183, at

*2, 4-5 (July 2, 1996). Here, the Court finds that the ALJ reasonably reviewed and discussed all of the relevant medical evidence in the record, including the findings of the treating physicians, the opinions of the consultative examining medical physicians, Drs. Parsley and Hundley, and the opinions of the state agency consultants, Drs. Mukherjee, Payne-Gair, and Sillers [Tr. 19-23], and that these opinions further support the ALJ's RFC determination.   [Tr. 94, 107, 126-128, 138, 140-141, 143-145]. Significantly, Dr. Mukherjee, whose opinion the ALJ also assigned great weight, found that Hensley retained the RFC to perform light work, including occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, and pushing and pulling commensurate with his ability to lift and carry, which is a greater RFC than ultimately reached by the ALJ. [Tr. 140-141; 143-145]. For these reasons, the Court concludes that the ALJ properly evaluated and considered the totality of the medical opinions in the record in connection with the RFC analysis, including Dr. Parsley's findings regarding Hensley's upper extremity strength and range of motion.

II. *The ALJ Properly Evaluated Plaintiff's Allegations of Pain and the ALJ's Credibility Finding is Supported by Substantial Evidence.*

Hensley's second contention of error is that the ALJ failed to properly evaluate his allegations of disabling pain,

specifically, that the ALJ's decision to discount his credibility is not supported by the record.  [DE 11 at 7-10].

The Sixth Circuit Court of Appeals has developed a two-prong test to evaluate a claimant's assertion of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (citations omitted).  In addition, "in evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Id.* (citing *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 538 (6th Cir.1981), *cert. denied,* 461 U.S. 957 (1983)).  The ALJ may present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003).

Here, the ALJ found that, objective testing and imaging revealed medically determinable impairments that could reasonably be expected to cause the alleged symptoms, including impairments from left shoulder and elbow pain, degeneration of his lumbar and cervical spine, headaches with vertigo/orthostatic lightheadedness, bilateral knee pain, depression, and panic disorder.  [Tr. 20-23].  However, the ALJ found that Hensley's

16

statements, and those of his fiancée, concerning the intensity, persistence, and limiting effects of the symptoms are not fully credible. [Tr. 20]. Specifically, the ALJ found that although the opinion evidence supports the determination that the claimant's impairments limit his physical activities, the ALJ found no support for Hensley's claim that he can stand for no more than twenty (20) minutes and sit no more than twenty (20) minutes. *Id*. The ALJ also rejected Hensley's fiancée's suggestion that Hensley cannot walk more than five minutes. *Id.* In support, the ALJ cites to evidence in the record that Hensley continues to be active, notwithstanding complaints of pain. [Tr. 22].

Hensley also takes issue with the ALJ's references to potential drug use by Hensley. [Tr. 11 at 8]. However, as discussed above, a review of the record reveals that there is evidence that Hensley has a history of alcohol abuse. In a record dated May 15, 2012, he stated that he had quit drinking in 2010 (Exhibit 4F, p. 2), yet in September of 2011, Hensley was diagnosed with alcohol induced pancreatitis. [Tr. 455, Exhibit 3F, pp., 26, 33; Exhibit 5F, p. 1). There are also various inconsistencies in the record regarding how long Hensley has been sober. [Exhibit 5F, p. 1, Exhibit 16F, p. 6). Regardless, while the ALJ noted Hensley's history of substance abuse, he specifically stated that "the record is insufficient to draw any conclusions" as to the history of Hensley's falls. [Tr. 21]. For these reasons, upon a

17

review of the record, the Court finds that the ALJ followed proper procedures when evaluating Plaintiff's claims regarding his pain symptoms and limitations.   Although an ALJ's assessment of a claimant's credibility must be supported by substantial evidence, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531 (citations omitted).

The undersigned cannot conduct a de novo review of the record evidence, and the findings of the ALJ are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.") (citation omitted).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  Thus, it is not uncommon in disability cases for there to be some inconsistencies in the record.  It is the duty of the ALJ to resolve any inconsistencies in the evidence, and the ALJ does not "cherry pick" the evidence merely by resolving some inconsistencies unfavorably

18

to a claimant's position.  *See Smith v. Comm'r of Soc. Security,*
2013 WL 943874, at *6 ("Rather than describing the ALJ's actions
as 'cherry-picking,' the Sixth Circuit has explained that it could
be more neutrally described as 'weighing the evidence.'"), citing
*White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir. 2009).

     The Court finds that is precisely what the ALJ did here.  He
weighed  the  evidence  and  made  a  determination,  supported  by
substantial  evidence  and  in  accordance  with  proper  procedures,
that Hensley is not disabled by his physical or mental impairments.
Although  there  is  no  doubt  that  Hensley  has  physical  impairments
which  affect  his  ability  to  work,  there  is  substantial  evidence
supporting  the  ALJ's  conclusions  regarding  Hensley's  resulting
functional  limitations,  and  the  Court  may  not  disturb  that
decision.

*IV.  Conclusion*

     For all of the reasons stated above, the decision rendered by
the ALJ and adopted by the Commissioner shall be affirmed.

     Accordingly, **IT IS ORDERED**:

     (1)  That the Plaintiff's motion for summary judgment [DE 11]
shall be, and the same hereby is, **DENIED**; and

     (2)  That the Commissioner's motion for summary judgment [DE
12] shall be, and the same hereby is, **GRANTED**.

     This the 18th day of July, 2016.

19



Signed By:

*__Joseph M. Hood__*

**Senior U.S. District Judge**